Abbas Kazerounian, Esq. (SBN: 249203)
AK@Kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Ave, Suite D1
Costa Mesa, CA 92626
Telephone: 800.400.6808
Facsimile: 800.520.5523

Yana A. Hart, Esq. (SBN: 306499)
Yana@Kazlg.com
**KAZEROUNI LAW GROUP, APC**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

William "Billy" Peerce Howard, Esq.
Billy@TheConsumerProtectionFirm.com
**THE CONSUMER PROTECTION FIRM, PLLC**
401 East Jackson Street, Suite 2340
Tampa, FL 33602
Telephone: 813.500.1500
Facsimile: 813.435.2369

John W. Barrett, Esq.
JBarrett@BaileyGlasser.com
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, WV 25301
Telephone: 304.345.6555

*Attorneys for Plaintiff,*
Mehar Ahmed

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| **MEHAR AHMED**, individually and on behalf of all others similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br>**COMENITY BANK,**<br><br><br>Defendant. | **CASE NO.: 8:20-CV-00453-JLS-KES**<br><br><br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO STAY** |

# **Table of Contents**

**Page No.**

TABLE OF AUTHORITIES………...………………......…………………ii

I.    INTRODUCTION……………………………………………………1

II.   LEGAL STANDARDS……………………………………………4

III.  ARGUMENT…………………………………………………………...5

    A. It is Highly Unlikely the Supreme Court Will Make All Robocalls

       Legal……………………………………………………………...5

    B. The Ninth Circuit's Marks' Ruling is Sound and is Unlikely to be

       Overturned………………………………………………..…..8

    C. This Court Should Follow Other Courts in Denying a Stay in

       Similar Cases……………………………………………...9

    D. The Supreme Court's Ruling in *Facebook* Will Not Dispositively

       Affect this Case Because the Parties Will Still Have to Conduct

       Discovery and Engage in Motion Practice…………………..…10

    E. The Hardship to the Putative Class and Plaintiff Would be Substantial

       and thus Warrants a Denial of Comenity's Motion to Stay…..……...12

IV.  CONCLUSION……………………………………………...……..16

## **Table of Authorities**

**Cases**                                                                                        **Page No.**

*Allan v. Pennsylvania Higher Educ. Assistance Agency,*
     968 F.3d 567, 574 (6th Cir. 2020)……………………...…………………………….8, 9

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)………………….....…..14

*Barr v. American Association of Political Consultants, Inc,*
     14- S. Ct. 2335 (U.S. July 6, 2020)…………………………….…1, 2, 5, 6, 7, 9

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014)…..15

*Blue Cross and Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,*
     490 F.3d 718, 724 (9th Cir. 2007)……………………………………………….3

*Bowden v. Bright House Networks, LLC*, No. 2:16-CV-1237-VEH,
     2017 WL 57343, at *2 (N.D. Ala. Jan. 5, 2017)………………………………..9

*Caudill v. Wells Fargo Home Mortg., Inc.,* No. CV 5:16-066-DCR,
     2016 WL 3820195, at *3 (E.D. Ky. July 11, 2016)……………….……….10

*Clinton v. Jones*, 520 U.S. 681, 708 (1997)………………………………...….5

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)………………....……….12

*Dependable Highway Express, Inc. v. Navigators Ins. Co.,*
     498 F.3d 1059, 1066 (9th Cir. 2007)……………….…………………….3, 12

*Dominguez v. Yahoo Inc.,* 894 F.3d 1116 (3rd Cir. 2018)………………..………9

*Duran v. La Boom Disco, Inc.,* 955 F.3d 279, 287 (2nd Cir. 2020)………..……….8

*Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016)………...13

*Facebook, Inc. v. Duguid*, 2020 WL 3865252,
     at *1 (U.S. July 9, 2020)…………………………….....…3, 4, 5, 11, 12, 13, 16

*Gadelhak v. AT&T Servs. Inc.*, 950 F.3d 458, 460 (7th Cir. 2020)……………..…….8

*Gissendaner v. Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015)…..……..11

*Glasser v. Hilton Grand Vacations Co.,* 948 F.3d 1301,
     1304-05 (11th Cir. 2020)…………………………………………………..…8

**PLAINTIFF'S OPPOSITION TO MOTION TO STAY**                              **8:20-cv-00453-JLS-KES**

*Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976)………………………………..11

*Izor*, No. 19-cv-01057-HSG, 2019 WL 3555110, at *3…………………….....……..13

*Johnson v. Comodo Group*, Case No.: 16-4469, DKT # 221

(D. N.J. Jan. 31, 2020)………………………………………………………….9

*Klein v. Hyundai Motor Finance*, 8:16-CV-01469-JLS-JCGx,

2016 WL 10519281, at *3 (C.D. Cal. Dec. 6, 2016)……………..……….9, 10

*Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)……………………………4, 12, 16

*Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO,

2018 WL 6459964, at *4………………………………………………...……13

*Lathrop v. Uber Techs., Inc.*, No. 14-cv-05678-JST,

2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016)………………..…….10, 13, 15

*Lockyer v.Mirant Corp.,* 298 F.3d 1098, 1110 (9th Cir. 2005)…………………………4

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997)…………….....……14

*Mancini v. JPMorgan Chase Bank, N.A.*, No. 1:15-cv-61524-UU,

2016 WL 1273185, at *1 (S.D. Fla. Mar. 28, 2016)…………………..………10

*Marks v. Crunch Sand Diego, LLC,*

904 F.3d 1041, 1043 (9th Cir. 2018)……………..……………..3, 4, 5, 8, 9, 13

*Montegna v. Ocwen Loan Servicing, LLC*, No. 17-CV-00939-AJB-BLM,

2017 WL 4680168, at *6 (S.D. Cal. Oct. 18, 2017)…………………....………15

*Nken v. Holder,* 556 U.S. 418, 433-34 (2009)……………………………....……5

*Nussbaum v. Diversified Consultants, Inc.*, No. Civ. 15-600, 2015 WL 5707147,

at *2 (D.N.J. Sept. 28, 2015)…………………………….………………….....10

*Pieterson v. Wells Fargo Bank, N.A.,* No. 17-cv-02306-EDL,

2018 WL 3241069, at *5 (N.D. Cal. July 2, 2018)………………….………..14

*Richardson v. Verde Energy USA, Inc.*, No. CV 15-6325,

2016 WL 4478839, at *2 (E.D. Pa. Aug. 25, 2016)…………….....……10, 14, 15

*Schwab v. Secretary, Department of Corrections*, 507 F.3d 1297 (11th Cir. 2007)….11

*Sliwa v. Bright House Networks, LLC*, No. 216-cv-235-FtM-29MRM,

2016 WL 3901378, at *5 (M.D. Fla. July 19, 2016)…………….….…..…10

*Wedgeworth v. Fibreboard Corp.*, 706 F.3d 541, 545 (5th Cir. 1983)………..…..…11

*Yosef Smith v. JPMorgan Chase Bank, N.A.,*

    No. 20-CV-01777-CBM-(PJW),

    2020 WL 5033532 (C.D. Cal. Aug. 21, 2020)………………...2, 3, 9, 11, 12, 13

*Young v. Peraza*, No. 15-60968-CIV-COHN/SELTZER,

    2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015)……………………………15

**PLAINTIFF'S OPPOSITION TO MOTION TO STAY**    8:20-cv-00453-JLS-KES

The Plaintiff, Mehar Ahmed, by and through her undersigned counsel, hereby submits this Opposition to Defendant Comenity Bank's Motion to Stay (Doc. 30), and states the following in opposition thereto:

## I. INTRODUCTION

"Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (U.S. July 6, 2020). This is how the United States Supreme Court led off their recent landmark robocall opinion. Tellingly, Comenity fails to even mention *Barr,* which passionately describes Congress's desire to protect Americans from the robocalls that plague our society today.

In *Barr*, a case where a similar big business interest unsuccessfully sought a ruling that the Telephone Consumer Protection Act's (TCPA) prohibition of robocalls be rendered unconstitutional in its entirety, the Supreme Court made clear its position on robocalls and lauded the purposes. The decision stated:

> Congress has retained a very broad restriction on robocalls. The pre-1991 statistics on robocalls show that a variety of organizations collectively made a huge number of robocalls. And there is no reason to think that the incentives for those organizations—and many others—to make robocalls has diminished in any way since 1991. The continuing robocall restriction proscribes *tens of millions* of would-be robocalls that would otherwise occur *every* day. Congress's continuing broad prohibition of robocalls amply demonstrates Congress's continuing interest in consumer privacy.

*Id.* at 2348 (emphasis in original).

Here, Comenity asks the Court to believe the Supreme Court will interpret the TCPA in such a manner that would make all calls made with traditional autodialers (aka

"robodialers") no longer covered by the TCPA.  In other words, Comenity is requesting a stay because they are pushing the theory that all robocalls previously covered by the TCPA, including all scam robocalls, will be legal in the future. That is exceedingly unlikely, especially given the Supreme Court's repeated pronouncements in *Barr* regarding the Congressional intent to protect consumers and their privacy via the TCPA.

Comenity[1] is using overseas "robo-calling centers" to harass and annoy people and their families throughout the United States. Its business model is to call family members of the people they are trying to collect debts from and instill panic in them by claiming they cannot find the alleged debtor and are "trying to reach" them, and then by asking the family member "if there is any way they can get a message to them," while all along knowing exactly where they are. [Doc. 1, ¶ 3-4] In this case, the alleged debtor was Javairia Syed – who did not owe the debt Comenity was collecting on. Comenity called Javairia Syed's husband, her brother and her sister-in-law, the Plaintiff Mehar Ahmed. A stay will allow Comenity's unconscionable robocalling center campaigns to continue.

Importantly, it should be noted that the Honorable Consuelo B. Marshall, a Judge of this District, recently authored a well-reasoned opinion rejecting a stay identical to the one sought here.  *See Yosef Smith v. JPMorgan Chase Bank, N.A.*, No. 20-CV-01777-CBM-(PJW), 2020 WL 5033532 (C.D. Cal. Aug. 21, 2020) ("*Smith*"). In that

---

[1]  Comenity Bank is debt collector of credit card debt that uses overseas calling centers, and is not a "bank" in a traditional sense.

decision, Judge Marshall noted that "[t]he stay requested by JPMC is indefinite, as it is purely speculative whether the United States Supreme Court will reach a decision in [*Facebook, Inc. v. Duguid*, 2020 WL 3865252, at \*1 (U.S. July 9, 2020)] within a year. The Ninth Circuit cautions against granting stays for indefinite periods of time." *Id.* at \*2. Furthermore, as Judge Marshall recognized, "[d]elay 'inherently increases the risk that witness' memories will fade and evidence will become stale.'" *Id.* (*quoting Blue Cross and Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007)). Additionally, Judge Marshall further recognized that "[b]eing required to defend a suit . . . does not constitute a 'clear case of hardship or inequity'" so as to justify a stay. *Smith*, 2020 WL 5033532, at \*2 (*quoting Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007)). The Plaintiff respectfully requests the Court follow Judge Marshall's opinion and reject the stay requested here.

While Comenity characterizes the state of TCPA autodialer jurisprudence as presenting "a deep and growing circuit split" that has now blossomed into a grant of certiorari review by the Supreme Court, it downplays a crucial fact: the Ninth Circuit has already decided what constitutes a robodialer, and there is thus no ambiguity as to what standard this Court should follow. (Doc. 30, p. 4). As Comenity stated in its motion, "[i]n *Marks v. Crunch San Diego, LLC*, [904 F.3d 1041, 1043 (9th Cir. 2018)] the Ninth Circuit 'conclude[d] that the statutory definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been

generated by a random or sequential number generator.'" (Doc. 30, p, 4).  Given the unfavorability of the *Marks* ruling to Comenity's interests, Comenity's stay motion is little more than a self-serving effort to obtain a benefit regardless of the ultimate outcome of the Supreme Court's review in *Facebook.*  At a minimum, Comenity will obtain a prolonged delay in liability if a stay is granted.  And, based upon a "wing and a prayer," it also hopes that it might obtain complete relief from liability.  These one-sided purposes are not valid reasons to grant a stay.

## II.   LEGAL STANDARD

As a general matter, stays of the kind requested by Comenity are significantly disfavored. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). The moving party "must make a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. The Supreme Court cautioned that due to the "likelihood or danger or abuse . . . there is no power by a stay to compel an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger." *Id.* at 256 (internal citation omitted).

Importantly, there is also a presumption that Comenity's requested stay should be denied, a presumption that Comenity has the burden of overcoming. *See Lockyer v Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). "The proponent of a stay bears the

burden of establishing its need." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009); *Clinton v. Jones*, 520 U.S. 681, 708 (1997). While this burden may be met in certain situations, the circumstances here do not warrant deviating from federal and local default rules. Therefore, this Court should deny Comenity's Motion since the current action is not one of the "rare circumstances" that warrant Comenity's requested stay.

## III.   ARGUMENT

All of the following applicable factors weigh in favor of allowing Plaintiff to litigate her case and to deny Comenity's motion: (a) the Supreme Court is very unlikely to narrow the definition of an ATDS so that all robocalls – including scam robocalls – are legal, (b) this Circuit's well-reasoned *Marks* decision is the majority rule, and it is improbable it will be overturned (c) this Court should follow the many other district courts that have denied motions to dismiss in cases with similar facts to this case, (d) regardless of how the Supreme Court rules in *Facebook,* it will not be dispositive of this case, (e) justice will be promoted by allowing the case to proceed, and a stay would represent justice denied because Plaintiff and the putative class will suffer severe prejudice from delay.

### A.   It is Highly Unlikely the Supreme Court Will Make All Robocalls Legal.

*Barr* strongly signals that the Ninth Circuit's interpretation of what constitutes an ATDS pursuant to the TCPA will be upheld.  Indeed, the Supreme Court began *Barr* by praising the TCPA, noting that "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Id.* at 2343.  The Supreme

Court immediately follows by emphasizing how "[t]he Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Id*.  The Defendant wants this Court to believe this nearly 30-year fight by the people's representatives will now end with a white flag and a surrender to millions upon millions of unwanted and illegal robocalls.

As the majority wrote, the TCPA "responded to a torrent of vociferous consumer complaints about intrusive robocalls." *Id*.

> Consumers were "outraged" and considered robocalls an invasion of privacy "regardless of the content or the initiator of the message." A leading Senate sponsor of the TCPA captured the zeitgeist in 1991, describing robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30821 (1991). In enacting the TCPA, Congress found that banning robocalls was "the only effective means of protecting telephone consumers from the nuisance and privacy invasion." TCPA §2, ¶12. To that end, the TCPA imposed various restrictions on the use of automated telephone equipment."

*Id*. at 2344

"In plain English, the TCPA prohibited almost all robocalls to cell phones." *Id*.  In plain English it doesn't sound like the Supreme Court is going to all of a sudden decide to legalize almost all[2] robocalls.

---

[2]  While all scam (texts and calls) robocalls would become legal overnight the only robocall that would still be covered are pre-recorded messages.

The Court, as noted above, stated that "Congress has retained a very broad restriction on robocalls. The pre-1991 statistics on robocalls show that a variety of organizations collectively made a huge number of robocalls. And there is no reason to think that the incentives for those organizations—and many others—to make robocalls has diminished in any way since 1991. The continuing robocall restriction proscribes *tens of millions* of would-be robocalls that would otherwise occur *every* day. Congress's continuing broad prohibition of robocalls amply demonstrates Congress's continuing interest in consumer privacy." *Id.* at 2348 (emphasis in original).    The Supreme Court thus seems exceptionally unlikely to curtail what it characterizes as "Congress's continuing broad prohibition of robocalls" by adopting an exceedingly narrow definition of what constitutes an ATDS.  *Id.*

The Supreme Court repeated its deep concern for "tens of millions of consumers" that would be assaulted daily if Congress's "clear prohibition of robocalls" was not in place.   In its rebuke of Justice Gorsuch's dissent, the *Barr* Court warned that his view would

> in effect allow all robocalls to cell phones—notwithstanding **Congress's decisive choice to prohibit most robocalls**. That is not a judicially modest approach but is more of a **wolf in sheep's clothing**. That approach would **disrespect the democratic process, through which the people's representatives have made crystal clear that robocalls must be restricted**. Justice GORSUCH'S remedy would end up harming a different and far larger set of strangers to this suit --- the **tens of millions of consumers who would be bombarded every day with nonstop robocalls notwithstanding Congress's clear prohibition of those robocalls**. (emphasis added)

This is not the language of a Court that looks like it will allow the Defendant's dream of unlimited robocalls to become reality.

**B.     The Ninth Circuit's Marks' Ruling is Sound and is Unlikely to be Overturned.**

Comenity fails to address the strength of the reasoning in the *Marks* decision, which now constitutes the majority view on the Circuit level as to whether a device that uses stored numbers from a calling list may constitute as an ATDS. In *Marks*, the Ninth Circuit answered this "stored number" question in the affirmative, determining the definition of an ATDS included "equipment which has the capacity (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically." *Marks*, 904 F.3d at 1043. Importantly, the Ninth Circuit has now been joined in this holding by the Second and Sixth Circuits. In *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 287 (2d Cir. 2020) the Second Circuit made clear that "an ATDS may call numbers from stored lists, such as those generated, initially, by humans."  Likewise, in *Allan v. Pennsylvania Higher Educ. Assistance Agency*, 968 F.3d 567, 574 (6th Cir. 2020), the Sixth Circuit agreed "with the Second and Ninth Circuits that the structure and context of the autodialer ban support an interpretation of ATDS that would cover stored-number systems[.]" The *Allan* court also went on to smartly illustrate why the reasoning of *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 460 (7th Cir. 2020) and *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1304–05 (11th Cir. 2020), the only two circuits who have reasoned

otherwise, amounted to "really a parade of horribles." *See Allan,* 968 F.3d at __. at 16[JWB1].

Following the Sixth Circuit's *Allan* decision, there is no longer an even Circuit split[3] on the meaning of an "automatic telephone dialing system" under the TCPA.  As the Circuit Courts currently stand, there is a 3-2 majority in favor of the *Marks* definition of an ATDS.  This, coupled with the Supreme Court's concerns of consumer complaints and its support for the TCPA voiced in *Barr*, strongly militates against a stay in this case.

## C.   This Court Should Follow Other Courts in Denying a Stay in Similar Cases.

Comenity's stay request should be denied just as similar requests have been denied in numerous similar cases.  As noted in the introduction, the authority supporting the denial of the requested stay includes the *Smith* case from within this District.  Moreover, a number of analogous cases from around the country also support denial of the requested stay.   *See, e.g., Bowden v. Bright House Networks, LLC*, No. 2:16-CV-1237-VEH, 2017 WL 57343, at *2 (N.D. Ala. Jan. 5, 2017) ("Having carefully considered all the arguments of the parties, the court finds that a stay is not appropriate in this case. [Comenity] has failed to meet its burden to show that the harm to it from

---

[3] Comenity mischaracterizes *Domiguez v Yahoo Inc.* 894 F.3d 1116 (3rd Cir. 2018), which merely tracked the language of an ATDS. In fact, *Johnson v. Comodo Group,* Case No. 16-4469, DKT # 221 (D. N.J. Jan. 31, 2020) specifically stated *Domiquez* followed *Marks* and that all predictive dialers were ATDSs.

---

the litigation's proceeding outweighs the Plaintiff's (and the public's) right to a prompt resolution of this matter."); *Klein v. Hyundai Motor Finance*, 8:16-CV-01469-JLS-JCGx, 2016 WL 10519281, at *3 (C.D. Cal. Dec. 6, 2016) (unpublished) (analyzing Comenity's arguments that the D.C. Circuit ruling would affect the outcome of the case but finding "this hypothetical chain of events far too tenuous to warrant imposing a stay"); *Caudill v. Wells Fargo Home Mortg.*, Inc., No. CV 5:16-066-DCR, 2016 WL 3820195, at *3 (E.D. Ky. July 11, 2016) ("In the absence of a clear benefit of awaiting a decision in ACA International, the defendant's desire for a stay is outweighed by [the plaintiff's] interest in resolving this case, as well as the public's interest in efficient judicial proceeding."); *Richardson v. Verde Energy USA, Inc.*, No. CV 15-6325, 2016 WL 4478839, at *2 (E.D. Pa. Aug. 25, 2016); *Sliwa v. Bright House Networks, LLC*, No. 216-cv-235-FtM-29MRM, 2016 WL 3901378, at *5 (M.D. Fla. July 19, 2016); *Mancini v. JPMorgan Chase Bank, N.A.*, No. 1:15-cv-61524-UU, 2016 WL 1273185, at *1 (S.D. Fla. Mar. 28, 2016); *Nussbaum v. Diversified Consultants, Inc.*, No. Civ. 15-600, 2015 WL 5707147, at *2 (D.N.J. Sept. 28, 2015); *Lathrop v. Uber Techs., Inc.*, No. 14-cv-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016).

In contrast to this extensive list of denied stays, Comenity relies upon a potpourri of joint or unopposed stays. Obviously, a situation where the parties are in agreement to a stay is inapposite and irrelevant.

**D.    The Supreme Court's Ruling in *Facebook* Will Not Dispositively Affect This Case Because the Parties Will Still Have to Conduct Discovery and Engage in Motion Practice.**

Before granting a stay pending the resolution of another case, "the Court must carefully consider the time reasonably expected for resolution of the 'other case' in light of the principle that 'stay orders will be reversed when they are found to be immoderate or of an indefinite duration.'" *Wedgeworth v. Fibreboard Corp.*, 706 F.3d 541, 545 (5th Cir. 1983). "[W]hether or not a stay is 'immoderate' is a function of two variables – the scope of the stay, and the reasons cited for ordering it." *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976) (wherein the Court denied a stay after finding that a stay in that matter, "in all probability will remain in effect at least eighteen months, and might last for as long as five years" and was therefore, "indefinite."). Concerning the stay requested here, it is particularly worth noting that immoderacy was the principal concern driving the denial of the stay in *Smith*, with Judge Marshall noting that "[t]he stay requested by JPMC is indefinite, as it is purely speculative whether the United States Supreme Court will reach a decision in *Duguid* within a year." *Smith*, 2020 WL 5033532, at *2.

A grant of certiorari in *Facebook* does not directly bear on the current state of the law under the TCPA. *See Gissendaner v. Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015). In *Gissendaner*, the Eleventh Circuit discussed the ramifications of a grant:

> Grants of certiorari do not themselves change the law, [and] they must not be used by courts of this circuit as a basis for granting a stay of execution that would otherwise be denied. Our decision in *Schwab v. Secretary*, *Department of Corrections*, 507 F.3d 1297 (11th Cir. 2007) is the latest in a long line of cases refusing to assign precedential significance to grants of certiorari.

While Comenity argues that a stay is in the public's best interest, it ignores the reality that an indefinite delay will occur as a result of awaiting a decision in the *Facebook* action, which was only granted certiorari this July, and may not be heard until next year or the next. Comenity also ignores the fact that the parties will still need to complete discovery and engage in motion practice to resolve the ATDS issue irrespective of how the Supreme Court rules in *Facebook*. It is thus wrong to state that a *Facebook* ruling will resolve the matter and preserve resources. The discovery to examine the nature of Comenity's autodialer will have to be done regardless of the *Facebook* ruling.

### E.     The Hardship to the Putative Class and Plaintiff Would be Substantial and thus Warrants a Denial of Comenity's Motion to Stay.

In determining whether to stay the action, the Court must balance the "possible damage [to Plaintiff] which may result from the granting of a stay," with "the hardship or inequity which [Defendant] may suffer in being required to go forward." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). If there is "even a fair possibility that the stay for which [Defendant] prays will work damage to someone else," then the movant must show a "clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. Importantly, as was mentioned in *Smith*, "[b]eing required to defend a suit [ ], does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Smith*, 2020 WL 5033532, at *2 (*quoting Dependable Highway Express*, 498 F.3d at 1066).  Quite obviously, Comenity has not made a compelling showing under these standards.

Comenity's arguments only become less compelling when they are further examined.  For example, Comenity claims that "Plaintiff will suffer no harm from a brief stay," apparently failing to recognize that the stay it requests is anything, but brief. Indeed, Judge Marshall recognized in *Smith* that the "[t]he stay requested . . . is indefinite, as it is purely speculative whether the United States Supreme Court will reach a decision in *Duguid* within a year." *Smith*, 2020 WL 5033532, at *2.

Comenity's request for a stay is blatantly self-serving. Only Comenity can benefit from the stay because, as noted above, the relevant standard in *Marks* is unfavorable to its position. And, perhaps most importantly, Comenity will benefit if a stay is granted even if *Facebook* turns out unfavorably to it, as it will have successfully delayed any liability in this case for the better part of a year or more.

Moreover, the Plaintiff, and more importantly the putative class, will suffer prejudice if this case is stayed for the indefinite period that is requested.  The case at bar targets Comenity's outrageous business practice of calling debtor's family members and lying to them claiming they are trying "to get in touch" with their customer although Comenity overseas debt collectors know exactly where the alleged debtor is. (Doc. 1, ¶ 4.) *See, e.g., Izor*, No. 19-cv-01057-HSG, 2019 WL 3555110, at *3 ("the stay Defendant seeks runs a serious risk of being 'essentially indefinite, since there is no clear indication that any FCC action is on the horizon.'") (citing *Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2018 WL 6459964, at *4 (rejecting the exact same basis for a stay and explaining how a stay could "indefinitely delay resolution" of the case);

*Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) (finding an indefinite stay presents a "fair possibility of harm" to plaintiff); *Lathrop*, 2016 WL 97511, at *4 (concluding that plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate")); *Pieterson v. Wells Fargo Bank, N.A.,* No. 17-cv-02306-EDL, 2018 WL 3241069, at *5 (N.D. Cal. July 2, 2018) (declining to stay case under inherent authority pending issuance of FCC order).

Here, Comenity principally argues that the requested delay would not be harmful because the calls to the named Plaintiff have stopped.  However, Comenity's calling of family members from their "overseas robo-calling centers" has absolutely not stopped and is rampaging our country as we speak.  In this case alone they called three different family members in two different states.   The class-wide injury is substantial. Comenity's abusive debt collection practices of calling family members, lying to them and instilling panic, has a domino effect throughout families, which is spreading out of control in our country at this very moment. (Doc. 1, ¶ 5) Significantly, "[t]he policy at the very core of the class action mechanism" is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (*quoting Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997)). "A class action solves this problem by aggregating the relatively paltry potential recoveries

into something worth someone's (usually an attorney's) labor." *Id.*  This purpose is not

effectuated by undue delay.

Furthermore, as was explained in *Richardson*,

> A "significant delay with unknown limits would cause them unnecessary prejudice. Memories fade, records are lost or destroyed as time wears on, and employees get fired, are transferred, or quit. On the other hand, the defendant would not be prejudiced if the stay is denied because it would experience no harm by engaging in discovery and motion practice."

*Richardson*, 2016 WL 4478839, at *2.  Here, Plaintiff faces severe evidentiary prejudice

with an indefinite delay, as witnesses' memories may fade with the passage of time, and

data may be lost because cellular telephone companies may not continue to hold the call

records that allow the identification of class members.  *See generally Birchmeier v.*

*Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014); *see also Lathrop*,

2016 WL 97511 at *4 ("[p]laintiffs argue persuasively that they would suffer prejudice

from a stay because the case would extend for an indeterminate length of time, increase

the difficulty of reaching class members, and increase the risk that evidence will

dissipate."); *Young v. Peraza*, No. 15-60968-CIV-COHN/SELTZER, 2015 WL

4639736, at *2 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay],

Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with

the passage of time."); *Montegna v. Ocwen Loan Servicing, LLC*, No. 17-CV-00939-

AJB-BLM, 2017 WL 4680168, at *6 (S.D. Cal. Oct. 18, 2017) ("to require Plaintiff to

remain in this indeterminate state of limbo is especially inequitable given that much of

the relevant evidence Plaintiff will be interested in, such as call logs and dialer

information, will be in the hands of third-parties and subject to unknown data retention policies"). In addition, there is the risk that employees of Comenity may be fired, transferred, or quit, during the protracted delay. On the other hand, there is no articulable prejudice to Comenity whose obligation it is to maintain records of consent and the calls it made.

## IV.    CONCLUSION

It is well established that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. Based upon the foregoing, Comenity has fallen far short of this standard. The immoderate stay requested by Comenity is indefinite, and without discovery there is little reason to believe that the ultimate ruling in *Facebook* will have a dispositive impact on this case. For these reasons, and the reasons discussed above, Plaintiff respectfully requests that Comenity's Motion to Stay be denied in its entirety.

Respectfully submitted,

Dated: September 22, 2020            **KAZEROUNI LAW GROUP, APC**

By:  *s/ Abbas Kazerounian*
　　　Abbas Kazerounian, Esq.
　　　*Attorneys for Plaintiff*